UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHLAND BANK,<br>DIVISION OF THE<br>PARK NATIONAL BANK, | )<br>)<br>)<br>) | CASE NO. 1:13 CV 02237 |
| Plaintiff, | )<br>) | JUDGE DONALD C. NUGENT |
| v. | )<br>)<br>) | MEMORANDUM OPINION |
| MANOR HOUSE ASSISTED LIVING,<br>LTD., et al., | )<br>)<br>)<br>) | |
| Defendants. | ) | |

This matter comes before the Court upon Plaintiff Richland Bank's Motion to Remand and Motion to Abstain pursuant to 28 U.S.C. § 1452(b). Plaintiff requests that the Court remand the instant case to the Richland County (Ohio) Court of Common Pleas, alleging that Defendants' Notice of Removal was both procedurally and jurisdictionally defective. For the reasons that follow, Plaintiff's Motion to Remand is hereby GRANTED.

In the alternative, Plaintiff asserts that abstention is warranted in this case pursuant to 28 U.S.C. § 1334(c). Again, for the reasons that follow, Plaintiff's Motion to Abstain is hereby GRANTED.

## STATEMENT OF FACTS

Plaintiff Richland Bank is a banking institution based principally in Mansfield, Richland County, Ohio. Defendants Midwest Senior Living Trust and Manor House Assisted Living are an Ohio trust and limited liability company respectively. Both operate out of Antwerp, Ohio. Defendants Louis and Mary Lengacher are the beneficial owners and operators of businesses associated with Midwest and Manor House.

In August of 2011, Defendants Lengachers, acting for themselves and on behalf of Manor House, approached Plaintiff seeking a $500,000 loan purportedly for improvements to an assisted living facility in Antwerp. Plaintiff required Defendants to produce their financial statements as a condition precedent to any lending of funds. Defendants submitted financial information to Plaintiff, and the loan was approved. On August 19, 2011, Defendant Louis Lengacher signed the promissory note for the loan on behalf of Manor House. He also signed a commercial guaranty personally guaranteeing repayment of the loan. Plaintiff alleges that Defendants had furnished false financial statements, failed to disclose hundreds of thousands of dollars in liabilities, and were thus in default of the promissory note.

In February of 2012, Defendants Louis and Mary Lengacher again approached Plaintiff, this time on behalf of themselves, Midwest, and Manor House. They sought a $4,850,000 loan, claiming that the money would finance improvements to yet another assisted residential living facility and also refinance some prior debt. Plaintiff again requested that Defendants complete due diligence information, including accurate financial statements and tax returns. Plaintiff claims that the information supplied by Defendants would later turn out to be materially false. Not knowing that Defendants had fabricated their financial information, Plaintiff approved the loan and signed a

commitment letter on or about February 27, 2012. The letter lists Midwest and Manor House as borrowers. Plaintiff avers that Defendants again obstructed the completion of due diligence by failing to disclose material financial information.

## STATEMENT OF THE CASE

On March 7, 2012, Plaintiff Richland Bank filed a Complaint in the Richland County (Ohio) Court of Common Pleas against Defendants Manor House Assisted Living, Ltd., Midwest Senior Living Trust, Ltd., Louis Lengacher, Mary Lengacher, and Essen House Restaurant, Ltd. Plaintiff requested collection of a guaranty executed by one of the Defendants, Louis Lengacher, to secure a Cognovit Promissory Note in the amount of $500,000. Alleging default, Plaintiff contended that the amount was due and owing. Further alleging that Defendants had fraudulently induced the Bank to sign a loan commitment letter between itself, Midwest Senior Living Trust, and Manor House (this time to the tune of $4,850,000), Plaintiff sought a declaration that it had no liability to Defendants under the letter.

On July 27, 2012, Defendants Lengachers filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana. (ECF #15). That action stayed all judicial proceedings against the debtors.

On February 26, 2013, Defendants Lengachers' bankruptcy was converted into a Chapter 7 proceeding, and one Yvette Gaff Kleven was appointed as Trustee of Defendants Lengachers' estate. On July 29, 2013, Defendants Lengachers received a discharge. Trustee Gaff Kleven subsequently filed a Notice of Removal in the Court of Common Pleas, removing the action to this Court on October 9, 2013.

This matter is now before the Court upon Plaintiff Richland Bank's Motion to Remand and Motion to Abstain pursuant to 28 U.S.C. § 1452(b). Plaintiff filed its motions on November 8, 2013, requesting that the Court remand the case to the Court of Common Pleas because the Notice of Removal filed by Defendants was both procedurally and jurisdictionally defective. Alternatively, Plaintiff requests that the Court remand because abstention is warranted pursuant to 28 U.S.C. § 1334(c).

Conversely, Defendants Lengachers – through Trustee Gaff Kleven – claim that Plaintiff had fraudulently represented that it had applied for and had obtained a USDA loan guaranty. (ECF #15). What is more, Defendants allege that Plaintiff's action had resulted in damage to Defendants, and that Plaintiff's refusal to fund the loan renders it liable for a whole litany of state law claims. Defendants further allege that Plaintiff's actions had "damaged [them] in excess of Eleven Million Dollars." Withal, they offer no accompanying documentation to substantiate their allegations.

## DISCUSSION

### 1. Timeliness of Filing

Defendants argue that their filing of the Notice of Removal was not procedurally defective. Citing 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure, Defendant asserts that the Notice was timely filed on two theories: (1) that it had been filed within "90 days after the order for relief in the case under the Code" because no order of relief had been entered in the bankruptcy; and (2) that it had been filed within "30 days after entry of an order terminating a stay" because an order terminating the automatic stay had not been entered in the bankruptcy. (ECF #11-1). Both of Defendants' theories are unavailing. As the rule governing timeliness provides, in

relevant part:

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under §362 of the Code, or (C) 30 days after a trustee qualifies in a [C]hapter 11 reorganization case but not later than 180 days after the order for relief.

*See* Fed. R. Bankr. P. 9027(a)(2)(A). In support of their argument, Defendants here contend that the filed Notice satisfies two of the three listed circumstances – specifically, those under (A) and (B). Defendants are plainly in error.

First, Defendants Lengachers' filing of a Chapter 11 petition on July 27, 2012, constituted an order for relief for the purposes of Rule 9027 timeliness. As the statute clearly outlines, "[t]he commencement of a voluntary case under a chapter [of the Bankruptcy Code] constitutes an order for relief under such chapter." *See* 11 U.S.C. § 301(b).

Second, the bankruptcy court's entering an order discharging Defendants Lengachers on July 29, 2013, meant that the automatic stay terminated upon the entry of that order. Where a case is "under [C]hapter 7 [of the Bankruptcy Code] concerning an individual or [one] under [C]hapter 9, 11, 12, or 13 [of the Code]," an automatic stay continues until "the time a discharge is granted or denied." *See* 11 U.S.C. § 362(c)(2)(C). Defendants' contentions to the contrary are therefore belied by the record and the governing law.

Given the above, Defendants' filing was untimely and remand to the Court of Common Pleas would be the appropriate course.

#### 2. Jurisdiction

Defendants next argue that their filing was not jurisdictionally defective. Referencing 28 U.S.C. § 1334, Defendants assert that this Court "has original jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." (ECF #11-1).

Be that as it may, the facts and circumstances of this case indicate that the state law claims at issue do not arise under Title 11. Put differently, the phrase 'arising under Title 11' and its various iterations describe "proceedings that involve a cause of action created or determined by a statutory provision of [T]itle 11, and 'arising in' proceedings are those that ... could arise only in bankruptcy cases." *See In re Wolverine Radio Co.*, 930 F.2d 1132, 1140 (6th Cir. 1991). Moreover, *contra* Defendants' claim that this action is a "core proceeding under Title 11 of the United States Code," if a proceeding does not invoke a substantive right created by federal bankruptcy law and is one that could exist outside of bankruptcy, then it is *not* a core proceeding. *Id.* at 1140-41. The state law claims clearly existed outside of bankruptcy, for the suit arose prior to Defendants' bankruptcy. The claims are therefore "non-core" for these purposes. *See, e.g., Loomis Elec. v. Lucern Prods.*, 225 B.R. 381, 386 (N.D. Ohio 1998) (state law breach of contract and declaratory judgment claims not core proceedings).

To buttress what has proven to be a weak argument on this point, Defendants also assert that the counterclaims are related to Defendants Lengachers' bankruptcy. This assertion is based on a fundamental misreading of applicable law. As the Sixth Circuit Court of Appeals has articulated, a court determining if a lawsuit is related to a particular bankruptcy must consider whether the lawsuit "could conceivably have any effect on the estate being administered in bankruptcy." *Wolverine Radio*, 930 F.3d at 1142 (quoting *In re Pacor, Inc.*, 743 F.2d 984 (3rd Cir. 1984))

(emphasis omitted). Such effect could occur where the outcome of the lawsuit "could alter the debtor's rights, liabilities, options, or freedom of action." *Id.* Plaintiff Richland Bank's claims against Defendants Lengachers have effectively been extinguished and will not be litigated as a result of Defendants' bankruptcy. As applied to the case at bar, therefore, Plaintiff's claims cannot fairly be said to have *any* effect on the estate being administered in bankruptcy. Further, the argument that Defendants Lengachers still have counterclaims in this lawsuit that could affect the administration of the bankruptcy is unpersuasive: the Lengachers are, at most, nominal parties to the counterclaims. That is to say, they are not real parties in interest. Under Ohio law, an action must be prosecuted by the real party (or parties) in interest – a 'real party in interest' being "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself ... i.e., one who is directly benefitted or injured by the outcome of [a] case." *See Boedeker v. Rogers*, 140 Ohio App. 3d 11, 19 (Ohio Ct. App. 2000) (internal citations omitted).

Here, Defendants' counterclaims arise solely out of Plaintiff's alleged failure to lend money to Midwest and Manor House (the only borrowers under the loan) and alleged breach of the contract to loan $500,000 to Manor House. Neither Midwest nor Manor House has entered into bankruptcy, and the transactions in question were not with Louis or Mary Lengacher in their individual capacities. Litigation of the counterclaims will thus have zero effect on the Lengachers' bankruptcy.

For the foregoing reasons, this Court does not have jurisdiction to hear this case pursuant to 28 U.S.C. § 1334. Remand to the Court of Common Pleas would thus be appropriate.

### 3. Abstention

Because this Court does not have the requisite jurisdiction to hear this case, it need not

address Plaintiff Richland Bank's arguments in favor of abstention. However, even if this Court did have jurisdiction, abstention would be appropriate.

*(i) Mandatory Abstention*

Assuming, *arguendo*, that this Court had jurisdiction to hear this case, 28 U.S.C. § 1334(c)(2) governs. The statute provides, in pertinent part:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under [T]itle 11 but not arising under [T]itle 11 or arising in a case under [T]itle 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Citing the above, Plaintiff avers that the jurisdictional carve-out "represents a [C]ongressional recognition of [] state courts' ability to properly assess such defenses," and argues on several different grounds that mandatory abstention should apply. Of those, the only ground disputed by Trustee Gaff Kleven is that of timely adjudication.

Trustee Gaff Kleven claims that Plaintiff's affidavit from Reese Mills[1], stating that the Common Pleas Court has openings and availability for trial in 2014, is inadequate. Trustee attaches its own affidavit, from Judge James Henson's Court Administrator, indicating that that court "sets multiple cases with as many as four civil trials being set on the calendar in first through fourth settings ... [and] criminal trials are set on Mondays and take precedence over civil trials." (ECF #15). Trustee cites no legal authority to call into question the sufficiency of Plaintiff's affidavit, and offers only her objection. On its part, Plaintiff – on whom the burden of demonstrating that the

---

[1] Attached as Exhibit D to Plaintiff's motion

-8-

abstention requirements are met rests – relies on the fact that its affidavit shows that "the court has openings and availability for trial in 2014."

This Court finds that Plaintiff's submission of the affidavit is sufficient to satisfy the requirement of timely adjudication: the affidavit resembled, in form and in substance, those accepted by similarly situated courts in the past. *See, e.g., CPC Livestock, LLC v. Fifth Third Bank*, 495 B.R. 332, 351 (W.D. Ky. 2013).

*(ii) Permissive Abstention*

The doctrine of permissive abstention is grounded in 28 U.S.C. § 1334(c)(1), which states:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under [T]itle 11 or arising in or related to a case under [T]itle 11.

Given the traditional principles of comity and respect for state law, against which Congress legislates, federal courts should hesitate to exercise jurisdiction where state issues predominate. As the Sixth Circuit Court of Appeals has recognized, such hesitation is advised where state issues "substantially predominate ... whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought." *See In re White Motor Credit*, 761 F.2d 270, 274 (6th Cir. 1985).

Courts, in determining whether permissive abstention is warranted, consult and consider the following list of factors:

- The effect or lack of effect on the administration of the estate if a court abstains;
- The extent to which state law issues predominate over bankruptcy issues;
- The difficulty or unsettled nature of the applicable state law;
- The presence of a related proceeding commenced in state court or other non-bankruptcy court;

- The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
- The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
- The substance rather than form of an asserted "core" proceeding;
- The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
- The burden of the court's docket;
- The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
- The existence of a right to a jury trial;
- The presence in the proceeding of non-debtor parties; and
- Any unusual or other significant factors.

*In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996). Trustee here argues that the counterclaims "could significantly impact the assets of the bankruptcy estate." Trustee also avers that "although non-core proceedings, the frauds committed by [Plaintiff] and the subsequent refusal to fund its Loan Commitment ... led to [Defendants Lengachers'] financial collapse and required the filing of the bankruptcy ... [making] these claims inextricably tied to the bankruptcy." Although Trustee pays lip service to the aforementioned list of relevant factors, her argument is devoid of any reference to *specific* factors, and thus fails to raise any colorable claims on the issue of permissive abstention.

On the other hand, Plaintiff provides an extensive, factor-by-factor analysis that properly applies the relevant law to the case at bar. Most compelling among the factors outlined is the extent to which state law issues predominate over the bankruptcy issues. The instant case presents questions purely of state law, which will predominate over any potential questions of bankruptcy law. The Richland County Court of Common Pleas is more than equipped to handle such questions. Indeed, the proceeding represents an Ohio dispute which should properly be decided in an Ohio state court.

For the reasons elucidated above, Plaintiff's Motion to Abstain is GRANTED.

## CONCLUSION

In light of the foregoing, Plaintiff Richland Bank's Motion to Remand is hereby GRANTED.

Plaintiff's Motion to Abstain is also hereby GRANTED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: _February 20, 2014_